James D. BREWER, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9311–CR–1296.

Supreme Court of Indiana.

March 3, 1995.

Richard D. Gilroy, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

## ON DIRECT APPEAL

DeBRULER, Justice.

This case comes to us on direct appeal. Ind.Appellate Rule 4(A)(7). Appellant James D. Brewer was convicted of murder in a jury trial and the trial court imposed a sixty (60) year sentence. Appellant raises the following issues for review:

1) whether appellant was competent to stand trial;

2) whether the trial court erred in admitting appellant's confession;

3) whether the evidence was sufficient, in light of appellant's self-defense claim, to sustain the conviction; and

4) whether the sentence imposed by the trial court was manifestly unreasonable.

On Monday, June 19, 1978, Officer Smith of the Indianapolis Police Department responded to a call at the Tway Company, 902 North Park Avenue. When he arrived at the company several employees were waiting

outside. Inside one of the company's offices, wrapped in a green blanket, was the body of Floyd Lancaster. Lancaster, the owner of the company, was last seen alive at approximately 2:00 p.m. on June 17, 1978. Officer Smith requested assistance from the homicide division and the coroner. In another room, Officer Smith observed a bloody drill.

Homicide Detective Donald Patton was assigned to the case. Officers unwrapped the body in order to look for wounds. There were no apparent injuries except to the head and face, which were covered with dried blood. A jar of vaseline was on a chair near the entrance to the room in which the body was found. The bloody drill was covered with vaseline. The police investigation proved fruitless.

Fourteen years later, at approximately 12:45 a.m. on March 31, 1993, appellant entered the Indianapolis Police Department, went to the Central Desk, and asked to speak with a homicide detective. Detective Monica Moore met appellant at the information desk and escorted him upstairs. She seated appellant at a table in an open area; he said that he had previously discussed some murders with a detective and wished to provide additional information about those murders. Detective Norman Matthews, at the request of Detective Moore, joined appellant and Detective Moore.

Detective Moore testified at trial concerning appellant's initial statement. She said:

[T]he Defendant stated that he wanted to talk about prior murders. The first, he stated, had occurred in the 600 block of North Park.... He stated that an older man had been killed, and that he had been hit in the head with a hard object. He stated that the incident probably occurred in '77 or '78, and more likely that it occurred in June, July or August of 1978, and that date would have been a Friday or a Saturday.... He stated that the victim's body was found on Monday, and we asked him how did he know the things that he was telling us. And he had been evasive at first, but he stated outright that he had done them.

After Detective Moore verified that such a murder had occurred, she advised appellant of his Miranda rights. Until this time, 3:20 a.m., appellant had been free to leave.

Appellant signed a waiver of rights form at 3:35 a.m. Appellant then gave a video and audio taped statement describing the other murder. After giving that statement, he had the opportunity to eat and use the toilet while the police awaited the arrival of the officer originally assigned to the case, Detective Patton. When Detective Patton arrived at 8:00 a.m., appellant was again advised of his Miranda rights and signed another waiver of rights form. Appellant began giving his statement about the Lancaster murder at 8:20 a.m. In each instance, he was advised of his rights on the tape itself, so that he received a total of four advisements of his Miranda rights. His statements contained a substantial amount of information about the murder, including many details which had never been reported in the press or revealed by the police department.

## I

Appellant claims that the trial court erred in determining that he was competent to stand trial.

The trial and conviction of one without adequate competence is a denial of federal due process and a denial of a state statutory right as well. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Tinsley v. State,* (1973), 260 Ind. 577, 298 N.E.2d 429; IND.CODE ANN. § 35–36–3–1 (West Supp.1994). A hearing to determine whether the accused is competent to stand trial is required where the trial court is confronted with evidence that creates a reasonable or bona fide doubt as to the competence of the accused. The standard for deciding such competency is whether or not the defendant currently possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him or her. *Mato v. State* (1982), Ind., 429 N.E.2d 945, 946. This test is sometimes stated as requiring that the defendant have sufficient present ability to consult counsel with a reasonable degree of rational understanding and to have a rational as well as factual understanding of the proceedings brought against

him or her.  *Evans v. State* (1973), 261 Ind. 148, 157, 300 N.E.2d 882, 887 (citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

■ The trial court as trier of fact is vested with discretion to determine if reasonable grounds exist for believing a defendant is competent to stand trial, and on appeal a determination by the trial court of the issue is viewed from a deferential perspective. *Montano v. State* (1984), Ind., 468 N.E.2d 1042, 1045. Where the evidence is in conflict, we will normally only reverse this decision if it was clearly erroneous, unsupported by the facts and circumstances before the court and the reasonable conclusions that can be drawn therefrom. *Ferry v. State* (1983), Ind., 453 N.E.2d 207.

■ In this instance, Dr. Hanus J. Grosz, a psychiatrist, stated in his report that the contents of appellant's confession indicated that appellant was "medico-legally sane" at the time of the crime and "is competent to stand trial and to cooperate with his attorney[,] provided he remains adequately medicated." Dr. Ned P. Masbaum's report also alleged that Brewer "does have comprehension sufficient to understand the nature of the proceedings herein and assist his attorney in his defense." Appellant testified at trial that he was thirty-eight years old and had been delusional since using LSD and other drugs when he was a teenager. When deciding to confess to police, he was under the influence of marijuana and was deeply in debt to drug dealers. He was employed and receiving disability checks. He had become a Christian and was haunted by deep feelings that he had done something "wrong religiously" in killing. After smoking some marijuana with a friend, he got out his Bible and said to himself, "I'm just tired of this. I'll be better off in jail than out here on the streets." Appellant's testimony was responsive, reasonable, and revealed a thought process involving the weighing of competing interests, not one driven by delusional thought. The testimony of appellant and these physicians provides adequate support for the trial court's determination of appellant's competence.

## II

■ Appellant asserts that his drug use and paranoid schizophrenia made him incapable of giving a knowing and voluntary waiver of his *Miranda* rights. Relying solely on claims of mental illness and intoxication, he challenges the admissibility of his videotaped statement.

■ In a criminal proceeding where a proper objection is made, the statement of the accused while a suspect in custody, made without counsel during police interrogation, is inadmissible absent proof beyond a reasonable doubt by the state that the statement was preceded by a knowing, voluntary, and intelligent waiver of the privilege against self-incrimination and the right to counsel. *Jackson v. State* (1980), 274 Ind. 297, 298–99, 411 N.E.2d 609, 610–11; *see also* Ind. Const. art. I, § 14. Neither the influence of drugs nor severe mental problems is sufficient to require the exclusion of a statement. Intoxication or mental illness are merely factors that are included in the totality of circumstances that a trial court considers in ruling on whether to admit a statement. *Pettiford v. State* (1993), Ind., 619 N.E.2d 925 (citing *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)); *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, *reh'g denied.*

■ In reviewing the trial court's decision on the voluntariness of a confession, we consider the unrefuted evidence in a defendant's favor and, where the evidence conflicts, that evidence which supports the conclusion of the trial court. *Burdine,* 515 N.E.2d at 1092. At the time appellant gave his videotaped confession, he appeared cogent and lucid. Moreover, he had consumed neither drugs nor alcohol for at least eight hours. There is nothing in the record that indicates that either mental illness or intoxication substantially undermined his ability to waive his rights and provide the police with a statement. There was no proof of threats, violence, promises, or use of improper influence. The trial court did not commit error when determining that the state satisfied its burden to show waiver. The statement was properly admitted.

## III

Appellant challenges the sufficiency of the evidence. He argues that the jury failed to consider his claim of self-defense.

When reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. We look to the evidence and reasonable inferences therefrom which support the verdict. The conviction will be affirmed if there is evidence of probative value from which a reasonable jury could infer guilt beyond a reasonable doubt. *Holder v. State* (1991), Ind., 571 N.E.2d 1250.

A claim of self-defense requires that the defendant acted without fault, must be in a place where he has the right to be, and must be in reasonable fear or apprehension of bodily harm. *Martin v. State* (1973), 260 Ind. 490, 296 N.E.2d 793. Self-defense is statutorily recognized as a valid justification for an otherwise criminal act. IND.CODE ANN. § 35–41–3–2 (West 1986); *see also Holder,* 571 N.E.2d at 1253 (quoting *Martin v. State* (1987), Ind., 512 N.E.2d 850, 851).

Appellant had an opportunity to present his self-defense claim to the jury. It is unclear why appellant believed that unwanted sexual advances from the victim should be considered so threatening, especially after appellant had already received consensual fellatio from the victim. In any event, the resolution of such issues is properly left to the jury. The jurors considered his claim of self-defense and found it inadequate, perhaps because the evidence indicated that appellant continued beating the victim long after the threat had dissipated. *See e.g. Hill v. State* (1989), Ind., 532 N.E.2d 1153. We will not disturb this result.

## IV

Finally, appellant claims that the sixty (60) year sentence imposed by the trial court is manifestly unreasonable.

This Court has chosen to limit by rule its authority to review any sentence that is permitted by statute. Ind. Const. art. VII, § 4; Ind.Appellate Rule 17(B). In applying this rule we engage in a two-step procedure. First, we determine whether the sentence appears to be disproportionate, i.e., "mani-festly unreasonable in light of the nature of the offense and the character of the offender." *Fointno v. State* (1986), Ind., 487 N.E.2d 140, 145. If we determine that such manifest unreasonableness may be present, we must then determine whether "no reasonable person could find such sentence appropriate to the particular offense and offender." *Id.* If, and only if, we find such inappropriateness, then we will revise a sentence in order to make it reasonable. *Id.* Sentencing is normally left to the sound discretion of the trial court. *See e.g. Fugate v. State* (1993), Ind., 608 N.E.2d 1370.

In this case appellant was convicted of murder and received the maximum sentence available, sixty (60) years. The presumptive sentence for murder is forty (40) years. While there are certainly some aggravating circumstances in the record, it appears clear to us that a significant mitigator has been given insufficient weight. *See Jones v. State* (1984), Ind., 467 N.E.2d 681 (failure to find mitigating circumstance clearly supported by record gives rise to belief that court was not cognizant of it and therefore failed to consider it). The fact that appellant voluntarily went to the police and confessed is a major mitigating factor. *See e.g. Evans v. State* (1992), Ind., 598 N.E.2d 516 (on rehearing). In this case, appellant had clearly succeeded in escaping responsibility for the heinous crime that he had committed nearly fifteen years before. His surrender and subsequent confession provided a major benefit to the community; that benefit to society should be reflected in the sentence imposed. In light of appellant's conduct in surrendering himself to the police and providing a full confession, the sentence was unreasonable considering the character of the offender.

### Conclusion

Accordingly, we affirm the conviction, vacate the sentence, and remand to the trial court for the imposition of a fifty (50) year sentence.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.