## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 20 2015, 6:38 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cleverly P. Lockhart,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 20, 2015

Court of Appeals Case No.
34A04-1407-CR-351

Appeal from the
Howard Circuit Court

The Honorable Bruce C. Embrey,
Special Judge

Cause No. 34C01-9406-CF-40

**Kirsch, Judge.**

[1] Cleverly P. Lockhart was convicted in 1995, after a jury trial, of one count of child molesting[1] as a Class C felony and three counts of child molesting,[2] each as a Class B felony. He brings this belated appeal after his re-sentencing in 1998, where he received a fifty-three-year sentence, and raises the following issue: whether the trial court erred when it re-sentenced him.

[2] We affirm.

## Facts and Procedural History

[3] The facts of Lockhart's 1995 convictions were set out in his direct appeal to this court as follows:

> In November of 1993, Lockhart moved into the house of his friend, Michelle Frazier. At first, Lockhart slept on a couch, but eventually began sleeping in the bedroom of Frazier's eleven year old son, J.R. Lockhart developed a close father-son relationship with J.R.
>
> In January of 1994, while Lockhart and J.R. sat on the floor under a blanket and watched television, Lockhart reached over and placed his hand inside J.R.'s underwear. Lockhart rubbed J.R.'s penis for several minutes.
>
> A couple of weeks later, Lockhart went into J.R.'s bedroom and locked the door. He told J.R. about oral sex and then pulled J.R.'s pants down. Lockhart placed his mouth on J.R.'s penis for several minutes.
>
> One month later, Lockhart again entered J.R.'s bedroom and locked the door. He performed oral sex on J.R. and forced J.R. to perform

---

[1] *See* Ind. Code § 35-42-4-3(b). We note that, effective July 1, 2014, a new version of the criminal statute at issue in this case was enacted. Because Lockhart committed his crimes prior to July 1, 2014, we will apply the statute in effect at the time he committed his crimes.

[2] *See* Ind. Code § 35-42-4-3(a).

oral sex on him. Afterwards, Lockhart placed his penis into a sock and masturbated until he ejaculated.

In March of 1994, Lockhart became angry with J.R. for not completing a household chore. Lockhart spanked J.R. and ordered him to go to his bedroom. Lockhart later went to J.R.'s bedroom to apologize. Lockhart told J.R. "how to make love to a guy" and then "french-kissed." Lockhart kissed J.R. all over his body and put his mouth on J.R.'s penis. Lockhart moved out of the house later that month. Before leaving, Lockhart told J.R. that if J.R. ever decided he was homosexual, he should contact Lockhart.

Approximately two weeks later, J.R. told his mother about the molestations. Frazier immediately reported the incidents to Child Protective Services.

*Lockhart v. State*, 671 N.E.2d 893, 896-97 (Ind. Ct. App. 1996). The State charged Lockhart with one count of Class C felony child molesting and three counts of Class B felony child molesting. At the jury trial, Lockhart did not raise mental illness as a defense, and he testified coherently in his own defense. Lockhart claimed to have received letters from the victim recanting the accusations against Lockhart; however, the evidence showed that the letters had not been written by the victim. There was also evidence and references to several other forged documents associated with the case. According to Lockhart's trial attorney, there were many forged documents concerning cases in which Lockhart was involved, and the attorney viewed documents provided by Lockhart with caution until they could be verified by other sources.

[4]     At the conclusion of the jury trial, Lockhart was found guilty as charged. The trial court sentenced him to eight years for the Class C felony conviction and twenty years each for the three Class B felony convictions, with the sentences to run consecutively, for a total sentence of sixty-eight years; however, believing it

was required to do so under statute, the trial court reduced the aggregate sentence to thirty years. This court affirmed Lockhart's convictions on direct appeal, but found that the trial court had erred in its belief that it was required to reduce Lockhart's sentence and had, therefore, imposed an illegal sentence. *Lockhart*, 671 N.E.2d at 904-05. Lockhart's original sentence was vacated, and the case was remanded with instructions to impose a "statutorily authorized sentence." *Id.* at 905.[3]

[5]  Although it is not clear why, Lockhart was examined by Dr. Angel Brignoni on September 19, 1995, about one month after his original sentencing, and by Dr. David Jarmon on April 22, 1996, about eight months after his sentencing.[4] In September 1995, Dr. Brignoni diagnosed Lockhart with bipolar disorder with psychotic features and concluded that Lockhart was incompetent to stand trial at that time. *Appellant's App. for 34A04-1204-CR-226* at 64-65. In April 1996, Dr. Jarmon diagnosed Lockhart with schizo-affective disorder, bipolar type and

---

[3] This court also stated, in a footnote, that three of the aggravating factors relied upon by the trial court were not proper. *Lockhart v. State*, 671 N.E.2d 893, 904 n.5 (Ind. Ct. App. 1996). This was, however, not the basis for vacating Lockhart's sentence, and there were four other aggravating factors relied upon by the trial court that were not found to be improper: (1) Lockhart's violation of probation; (2) his prior criminal history; (3) the need for correctional treatment; and (4) the violation of a position of trust. *Id.* at 903.

[4] The CCS contains no entries indicating either that these evaluations were ordered or that the reports were filed with the trial court. Dr. Brignoni's report states that Lockhart was being evaluated "to determine whether he is competent to stand trial," but at the time of the evaluation, Lockhart had already been tried, convicted, and sentenced for his crimes. *Appellant's App. for 34A04-1204-CR-226* at 61. Dr. Jarmon's report states that Lockhart was currently incarcerated and had been for approximately three years for an arrest on child molesting charges, *id.* at 57; however, at the time of evaluation, Lockhart had already been convicted and sentenced for the child molesting charges. Therefore, it does not seem that these reports were created in connection with this case as the case would have been on appeal with this court at the time the evaluations were performed.

concluded that there were questions about Lockhart's competency to stand trial. *Id*. at 60. Dr. Jarmon also cautioned, however, that he could not rule out the possibility of malingering in this case. *Id*. at 58.

[6] On June 12, 1997, Lockhart's attorney for the re-sentencing filed a motion requesting a mental examination, which was granted by the trial court. The trial court received a copy of the report from this mental examination on April 2, 1998. A report of a psychiatric evaluation done by Dr. Edward Wasserman on July 15, 1997 is contained in the record, which states that the evaluation had been ordered to recommend admission to the psychiatric ward of the Westville Correctional Center. It appears this was the report that the trial court referred to at the re-sentencing hearing as it occurred close in time to the ordered evaluation, and in the transcript of the re-sentencing, the trial court referred to page two of the report and verbatim quotes Dr. Wasserman's diagnosis of "'Bi-Polar [a]ffective Disorder with psychosis and rule out schizo[a]ffective disorder, also chemical dependency to poly-substances.'" *Appellant's App. 34A04-1204-CR-226* at 52 (quoting *Appellant's App. 34A05-0905-PC-293* at 34). The July 15 report recommended that Lockhart be admitted to the psychiatric area for further observation and treatment, but did not contain an opinion that Lockhart was incompetent at that time.

[7] The re-sentencing hearing was held on April 16, 1998. During the hearing, Lockhart did not claim that he was currently incompetent or make any objection that he could not be sentenced on that basis. The parties did not present any evidence except for Lockhart's counsel referring to "the information

that the [c]ourt had on the . . . medical reports." *Id*. at 47. The trial court mentioned a psychiatric evaluation given to it by Lockhart's counsel, presumably the evaluation done by Dr. Wasserman on July 15, 1997, and to two exams it already had, presumably the reports by Drs. Brignoni and Jarmon. After argument by the parties, the trial court found as aggravating factors that Lockhart was on probation at the time he committed the crimes, his prior criminal history, that prior periods of incarceration had not rehabilitated him, and the violation of a position of trust. It found as a mitigating factor that Lockhart suffers from bi-polar affective disorder with psychosis. The trial court found the aggravating factors outweighed the mitigating factor and sentenced Lockhart to eight years for his Class C felony conviction and fifteen years for each of his three Class B felony convictions with the sentences to run consecutively for an aggregate sentence of fifty-three years.

[8] Lockhart filed a petition for post-conviction relief shortly after the re-sentencing hearing. At the hearing on his petition, Lockhart attempted to admit several exhibits, which the post-conviction court excluded, including an affidavit purporting to be from Lockhart's re-sentencing counsel that stated that Lockhart was incompetent during the re-sentencing hearing. The attorney testified at the hearing, however, and stated that it was not his signature on the affidavit and he did not remember the affidavit. Included in the documents attached to this alleged affidavit by the attorney was a one-page letter purporting to be from Dr. Wasserman to the sentencing judge dated January 14, 1998 that stated the opinion that Lockhart was incompetent at that time.

Lockhart's post-conviction petition was denied, and this court affirmed that ruling on appeal.

[9]     Lockhart filed a motion to correct erroneous sentence in March 2012, which was denied by the trial court. On his appeal of that denial, Lockhart included a one-page document in his appendix that claimed to be a report by Dr. Wasserman regarding an evaluation conducted on April 13, 1998. The report stated that Lockhart was incompetent at that time. The denial of Lockhart's motion to correct erroneous sentence was affirmed. Lockhart now belatedly appeals his 1998 re-sentencing.

## Discussion and Decision

[10]    Lockhart argues that the trial court erred when it re-sentenced him. He first contends that the trial court abused its discretion when it sentenced him to fifty-three-years at his re-sentencing hearing. We review a trial court's sentencing decision for an abuse of discretion. *Gellenbeck v. State*, 918 N.E.2d 706, 711 (Ind. Ct. App. 2009). An abuse of discretion occurs if the sentencing decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[11]    Lockhart concedes that the sentence imposed by the trial court was within statutory parameters and that the "sentencing order is not subject to challenge on the grounds of an improper [weighing] of aggravating and mitigating factors." *Appellant's Br*. at 9. Instead, Lockhart argues that the trial court abused its discretion in "treating incompetence . . . as merely a mitigating circumstance, rather than a prohibited violation of federal due process." *Id*. He

contends that, at the re-sentencing hearing, he submitted reports that indicated that he was incompetent and that, because a conviction of an incompetent person is a violation of federal due process, the sentencing of an incompetent person must also be a denial of due process.

[12] Initially, we note that Lockhart failed to provide a cogent argument in support of his contention. Indiana Appellate Rule 46(A)(8) requires that contentions in an appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal. "A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record." *Davis v. State,* 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005), *trans. denied.* Here, Lockhart merely cites to case law stating that a defendant may not stand trial when incompetent, but makes no citation to authority that states that a defendant may not be sentenced if incompetent. Further, he does not assert any argument as to why such a rule would apply to the present case, where he was merely being re-sentenced due to an error in the original sentencing and no evidence was even presented at the re-sentencing hearing. Therefore, Lockhart has waived this contention by failing to provide a cogent argument in support of his claim.

[13] Waiver notwithstanding, Lockhart's argument fails. In support of his contention that he was incompetent at the time of the re-sentencing hearing, Lockhart points to three reports: the September 1995 evaluation report by Dr. Brignoni; the April 1996 evaluation report by Dr. Jarmon; and an evaluation

report by Dr. Wasserman dated April 13, 1998. Dr. Brignoni evaluated Lockhart in September 1995, two and a half years before the re-sentencing hearing. Dr. Jarmon evaluated Lockhart in April 1996, two years before the re-sentencing. Given that these reports were completed at least two years prior to when Lockhart was re-sentenced, they are not relevant as to whether he was competent at the time of the re-sentencing hearing because it would be speculation to assume that Lockhart's condition was still the same as it was two years prior. The presumption that Lockhart's condition is not the same as it was two years prior is supported by the fact that his attorney did not assert that Lockhart was incompetent at the re-sentencing or object to the re-sentencing occurring on that basis.

[14] Therefore, the only remaining evidence supporting incompetence was the report by Dr. Wasserman dated April 13, 1998. Although Lockhart has included this report in the record on appeal, there is no evidence that this report was presented to the trial court at re-sentencing. The one-page report at issue is not file-stamped and is dated April 13, 1998. *Appellant's App. 34A04-1204-CR-226* at 66. The CCS indicates that, on April 2, 1998, the trial court received a mental evaluation that had been requested on June 12, 1997, and no other entries reflect that a subsequent report was received between April 13 and 16, 1998. *Appellant's App* at 21. It is clear that this one-page report was not the same one discussed by the parties at the re-sentencing hearing. The report discussed was two pages in length, and the language quoted by the trial court matches that from a report by Dr. Wasserman completed on July 15, 1997, but does not

match any language from the April 13 report. The two-page evaluation from July 15, 1997 also seems more likely to be one ordered by the trial court as it occurred closer in time to June 12, 1997, the date it was ordered. It is important to note that, although the July 15, 1997 report diagnosed Lockhart with significant mental health issues, it did not allege that he was incompetent at that time. *Appellant's App. 34A05-0905-PC-293* at 33-34. The record, therefore, does not support that the April 13 report was ever before the trial court at re-sentencing.[5] Lockhart has failed to present evidence that the evidence presented to the trial court at his re-sentencing hearing demonstrated that he was incompetent at that time.

[15] Even if there was evidence that the trial court was presented with reliable evidence that Lockhart was incompetent at the time of re-sentencing, it would not have been an abuse of discretion to re-sentence Lockhart in this case. The trial and conviction of a defendant who lacks adequate competence is a denial of federal due process. *Brewer v. State,* 646 N.E.2d 1382, 1384 (Ind. 1995). The standard for deciding competency is whether or not the defendant possesses the ability to consult rationally with counsel during the case and factually comprehend the proceedings against him or her. *Id.* It clearly violates due process for a defendant to stand trial when he has no understanding of the

---

[5] The circumstances of this case also cause concern as to the validity of the April 13, 1998 report by Dr. Wasserman. There was a history of previous forged documents in this case associated with Lockhart. The April 13 report was not file-stamped and was contained in an appendix submitted by Lockhart pro se in prior proceedings in this case. Nothing in the CCS shows that this report was ever filed in this proceeding.

proceedings and cannot assist in his defense. *Id*. at 1384-85. However, no authority has been presented to indicate that this due process right extends to the imposition of sentence.

[16] Even assuming that there is a constitutional due process right to be competent at the initial hearing, it does not mean this is automatically true for a re-sentencing hearing as occurred in the present case. At the original sentencing hearing, the defendant may provide important assistance to his counsel in preparing evidence and witnesses to present on his behalf. *See* Ind. Code § 35-38-1-3 (defendant is entitled to subpoena and call witnesses and to present information in his own behalf at sentencing hearing). A defendant also provides information for the pre-sentence investigation report and has an opportunity to speak on his behalf before the sentence is imposed. Therefore, a defendant's ability to assist in his sentencing hearing would be hindered if he were not competent during his original sentencing hearing.

[17] However, in the present case, such reasoning does not apply. Here, Lockhart's re-sentencing hearing was just an opportunity for the trial court to correct a legal error that happened during the original sentencing. No new evidence was presented, and neither party called any witnesses. No new pre-sentence report was presented, and the trial court was not asked to consider any new aggravating or mitigating factors. Thus, this was not a proceeding where the defendant's ability to assist his counsel was necessary to protect his rights or where there were significant issues that required defendant's participation. The purpose of this re-sentencing hearing was to impose a sentence that did not

include the legal error that occurred in the initial hearing. We conclude that the trial court did not abuse its discretion when it sentenced Lockhart.

[18] Lockhart next argues that his fifty-three-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Under Indiana Appellate Rule 7(B), "we may revise any sentence authorized by statute if we deem it to be inappropriate in light of the nature of the offense and the character of the offender." *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014).[6] The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate. *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. *Chappell v. State,* 966 N.E.2d 124, 133 (Ind. Ct. App. 2012), *trans. denied.*

[19] As to the nature of the offense, Lockhart repeatedly molested the eleven-year-old son of his friend, who had allowed him to stay with her. The victim did not have a father figure in his life, and Lockhart developed a close father-son relationship with the boy. Over the span of a few months, Lockhart progressed from fondling J.R. to performing oral sex on the boy and having J.R. perform

---

[6] On July 19, 2002, our Supreme Court amended Indiana Appellate Rule 7(B) effective January 1, 2003. The rule is directed to the reviewing court and sets forth the standard for that review. Because that review is made as of the date the decision or opinion is handed down, even when a sentence was imposed prior to January 1, 2003, we will review the sentence using the "inappropriate" test that is currently in effect. *Kien v. State*, 782 N.E.2d 398, 416 n.12 (Ind. Ct. App. 2003), *trans. denied*.

oral sex on him. Lockhart also told J.R. that he was teaching him "how to make love to a guy." *Lockhart*, 671 N.E.2d at 897. As a result of Lockhart's acts, J.R. suffered significant behavioral and emotional issues. Lockhart's offenses consisted of multiple molestations of the victim that occurred over a period of several months, he abused a position of trust, and he caused significant emotional harm to the victim. Lockhart's sentence is not inappropriate in light of the nature of the offense.

[20] As to Lockhart's character, he has a significant criminal history that consists of at least four felony convictions, including arson, theft, and forgery. Lockhart was also on probation at the time he committed the offenses for which he was re-sentenced. Additionally, there was evidence that Lockhart had forged documents involved in this case. Further, Lockhart's abuse of his position of trust with the victim in this case, with whom he had a father-son relationship, speaks to his poor character. We conclude that Lockhart's sentence is not inappropriate in light of his character. The trial court did not err in imposing a fifty-three-year sentence at Lockhart's re-sentencing hearing.

[21] Affirmed.

Vaidik, C.J., and Bradford, J., concur.