**Steven Allen GELLENBECK, Appellant/Defendant,**

v.

**STATE of Indiana, Appellee/Plaintiff.**

**No. 79A02–0903–CR–253.**

Court of Appeals of Indiana.

Dec. 30, 2009.

---

Bruce W. Graham, Graham Law Firm P.C., Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Henry A. Flores, Jr., Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Steven Gellenbeck appeals from his convictions of and sentences for five counts of Class D felony Child Seduction.[1] We affirm.

### FACTS AND PROCEDURAL HISTORY

V.S.'s parents divorced when she was seven years old, and her father ("Father") was awarded custody of her when she was ten. When V.S. was sixteen years old, her "relationship with her mother was becoming very, very difficult. It was affecting her very adversely [as well as] starting to have a negative effect" on her relationship with Father. Tr. p. 96. Moreover, V.S.'s "grades were just a disaster and, uh, just could not, [Father] couldn't get it solved." Tr. p. 96. V.S.'s therapist suggested that a stronger female presence in her life could benefit her, so Father made arrangements for her to live with Gellenbeck (who was forty-two at the time) and his wife Theresa, her aunt and uncle, during the

---

1. Ind.Code § 35–42–4–7 (2006).

2006–2007 school year. Gellenbeck and Theresa "were more than willing to do whatever it took to help out to try to straighten out V.S.'s life." Tr. 97.

Three months after V.S. moved in with Gellenbeck and Theresa, her mother committed suicide, an event that "absolutely devastated" her. Tr. p. 117. Through the school year, V.S. stayed with Gellenbeck and Theresa in Lafayette during the week and with Father every other weekend. During the time V.S. lived with Gellenbeck and Theresa, they were "taking care of the tasks that a parent would normally take care of[.]" Tr. p. 171. Gellenbeck and Theresa provided V.S. with food, shelter, and transportation, and V.S.'s school had permission to confer with Gellenbeck "about any educational issue that may arise." Tr. p. 99. Gellenbeck spent an "enormous amount of time" assisting V.S. with her studies and homework. Tr. p. 100. Father told V.S. that she was to obey Theresa and Gellenbeck's rules, and they were authorized to punish or discipline her when she failed to do so. When V.S. moved in, she regarded Gellenbeck as a father figure.

On the other hand, Gellenbeck did not have, *vis-á-vis* V.S., the authority to authorize medical treatment, sign school permission slips, obtain school information, or direct religious training. Father continued providing for medical care and insurance, clothing, school supplies and fees, and toiletries. With the exception of food, Father continued to provide for all of V.S.'s financial needs. Father continued to take her to some of her medical, dental, and optical appointments.

Over spring break in 2007, V.S. was under the covers between Gellenbeck and Theresa in their bed when Gellenbeck kissed her. The kiss was a "make-out" kiss, and V.S. and Gellenbeck eventually ended up kissing "[a] lot[,]" including tongue kissing. Tr. p. 63. That spring, Gellenbeck also inserted his fingers into V.S.'s vagina "a few times" and "[m]ove[d] them around." Tr. p. 65. Additionally, Gellenbeck fondled V.S.'s bare breasts and had her touch his erect penis with her hand. Once, Gellenbeck masturbated in V.S.'s presence, ejaculating on her hand.

On August 8, 2007, the State charged Gellenbeck with five counts of Class D felony child seduction, alleging, *inter alia,* that he was V.S.'s custodian at the time of their sexual activity. On December 24, 2008, a jury found Gellenbeck guilty as charged. On February 11, 2009, the trial court sentenced Gellenbeck to eighteen months of incarceration for each conviction, all sentences to be served consecutively, with three and one-half years of the aggregate seven-and-one-half-year sentence suspended to probation. At sentencing, the trial court found that the great disparity in Gellenbeck's and V.S.'s ages and V.S.'s mental condition were aggravating circumstances. In its sentencing statement, the trial court found, as aggravating circumstances, Gellenbeck's relationship to V.S., the repetitive nature of his crimes, and V.S.'s mental condition at the time. The trial court found, as mitigating circumstances, Gellenbeck's lack of a prior criminal history and that his incarceration would cause an undue hardship on his family.

## DISCUSSION AND DECISION

### I. Whether the State Produced Sufficient Evidence to Sustain Gellenbeck's Convictions

■ Our standard of review for challenges to the sufficiency of the evidence supporting a criminal conviction is well-settled:

In reviewing a sufficiency of the evidence claim, the Court neither reweighs

the evidence nor assesses the credibility of the witnesses. We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. We will affirm the conviction if there is probative evidence from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt.

*Vitek v. State,* 750 N.E.2d 346, 352 (Ind. 2001) (citations omitted).

In the spring of 2007,[2] Indiana's child seduction statute provided in part as follows:

> (d) As used in this section, "custodian" means any person who resides with a child and is responsible for the child's welfare.
>
> . . . .
>
> (h) If a person who is:
>
>> (1) at least eighteen (18) years of age; and
>>
>> (2) the:
>>
>>> (A) guardian, adoptive parent, adoptive grandparent, custodian, or stepparent of; or
>>>
>>> (B) child care worker for;
>
> a child at least sixteen (16) years of age but less than eighteen (18) years of age; engages with the child in sexual intercourse, deviate sexual conduct (as defined in IC 35–41–1–9), or any fondling or touching with the intent to arouse or satisfy the sexual desires of either the child or the adult, the person commits child seduction, a Class D felony.

Ind.Code § 35–42–4–7 (2006). Gellenbeck does not dispute that he resided with V.S. but nonetheless contends that the evidence cannot support a conclusion that he was her "custodian," for purposes of section 35–42–4–7, at the time of their sexual activity, noting that Father still retained some authority over her. The State counters that Gellenbeck, being responsible for most of V.S.'s daily needs and discipline, qualified as her custodian.

"The interpretation of a statute is a question of law reserved for the courts." *Scott v. Irmeger,* 859 N.E.2d 1238, 1239 (Ind.Ct.App.2007).

> A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Rupert v. State,* 717 N.E.2d 1209, 1210 (Ind.Ct.App. 1999). . . . Though penal laws are to receive a strict construction, they are not to be construed so strictly as to defeat the obvious or expressed intent of the legislature. *Id.*

*Fuller v. State,* 752 N.E.2d 235, 237–38 (Ind.Ct.App.2001).

As previously mentioned, the statute provides that " 'custodian' means any person who resides with a child and is responsible for the child's welfare." Ind.Code § 35–42–4–7(d) (2006). In *State v. D.M.Z.,* 674 N.E.2d 585, 590 (Ind.Ct.App.1996), *trans. denied,* we held that

> to be a custodian under the [child seduction] statute, a person "responsible for a

---

2. Effective July 1, 2009, Indiana Code section 35–42–4–7 was amended, and, *inter alia,* the material that once appeared in subsections (d) and (h) now appears in subsections (e) and (k), respectively, with some additional provisions that are not relevant here.

child's welfare," a person must occupy a position of trust and have the authority and responsibility to make decisions concerning the child's welfare, to act without guidance or superior authority, as a parent would or *in loco parentis.*

With this in mind, we now turn to Gellenbeck's relationship with V.S. We conclude that the record contains ample evidence to allow a jury to conclude that Gellenbeck was a "custodian" under section 35–42–4–7. The record contains testimony that Gellenbeck and his wife had responsibility for parental tasks; they provided V.S. with food, shelter, and transportation; and they were authorized to discipline V.S. if she failed to follow their rules. Gellenbeck spent an "enormous amount of time" assisting V.S. with her studies and homework and was authorized to communicate with her school regarding educational issues. Tr. p. 100. There is no evidence that Father had any influence over Gellenbeck's exercise of these responsibilities. Moreover, V.S. regarded Gellenbeck as a father figure. (Tr. 91–92).

Indeed, the reason V.S. moved in with Gellenbeck and Theresa at all was so that they could help her to progress and thrive, as a parent would be expected to. Before moving in, V.S.'s relationships with her mother and Father had deteriorated, as had her grades, problems Father felt helpless to correct. The record indicates that Gellenbeck and Theresa enthusiastically welcomed their new charge, being "more than willing to do whatever it took to help out to try to straighten out V.S.'s life." Tr. 97. Gellenbeck was clearly charged with far more than mere supervision—it seems that he was charged with nothing less than helping V.S. to turn her academic and personal lives around, a responsibility he willingly accepted. So, while Father retained some responsibility for V.S.'s welfare, this did not negate Gellenbeck's re-

sponsibility, which was great indeed. Thus, we conclude that the State presented sufficient evidence for a reasonable jury to conclude that Gellenbeck was V.S.'s custodian under the statute. Gellenbeck's arguments to the contrary on appeal are merely requests for this court to reweigh the evidence, which we cannot do. *See Jones v. State,* 783 N.E.2d 1132, 1139 (Ind. 2003).

## II. Sentence

### A. Abuse of Discretion

■ Gellenbeck's offenses were committed after the April 25, 2005, revisions to Indiana's sentencing scheme. Under this new sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g,* 875 N.E.2d 218 (Ind.2007). We review the sentence for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

■ A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id.* at 490–91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, under

the new statutory scheme, the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. *Id.*

### 1. Aggravating and Mitigating Circumstances

Gellenbeck contends that the trial court failed to find his lack of criminal record and that his incarceration would work a hardship on his family to be mitigating circumstances when it did not mention them aloud at sentencing. The trial court, however, identified both of these circumstances as mitigating in its written sentencing statement, and we may review both oral and written statements in order to identify the findings of the trial court. *See McElroy v. State*, 865 N.E.2d 584, 589 (Ind.2007). Moreover, to the extent that Gellenbeck contends that the trial court gave insufficient weight to these mitigating circumstances, the relative weight assigned to aggravating and mitigating circumstances is not subject to appellate review. *Anglemyer*, 868 N.E.2d at 491.

Gellenbeck also contends that the trial court improperly considered his relationship with V.S., the disparity in their ages, and her mental condition to be aggravating circumstances. While it is well-settled that a trial court may not use elements of a crime to enhance a sentence, *see Johnson v. State*, 687 N.E.2d 345, 347 (Ind.1997), the trial court may find that the particularized circumstances of a crime were aggravating. *Henderson v. State*, 769 N.E.2d 172, 180 (Ind.2002). We conclude that the trial court did not abuse its discretion in this regard. Gellenbeck was not merely a custodian but an uncle with whom V.S. was close and a person she considered to be a father figure. Although a custodian has to be at least eighteen years old under the child seduction statute,

*see* Ind.Code § 35–42–4–7(h)(1) (2006), Gellenbeck's forty-two years far exceeded that minimum. As such, it was not improper for the trial court to consider the disparity between Gellenbeck's and V.S.'s ages. We conclude that the trial court acted within its discretion in concluding that a disparity of twenty-six years was aggravating.

Finally, Gellenbeck contends that the record does not demonstrate that V.S.'s mental condition was compromised at the time of his crimes. The record, however, indicates that V.S. moved in with Gellenbeck at the suggestion of her therapist and that her mother committed suicide three months later, leaving her "absolutely devastated." Tr. p. 117. Moreover, V.S.'s therapist testified that she "was still certainly grieving the loss of her mother[,] was very angry[,] was very sad[,] was having difficulties sleeping [and] concentrating[,] and felt very alone" following her mother's suicide. Tr. p. 172. The trial court did not abuse its discretion in finding that V.S.'s mental state was fragile at the time of Gellenbeck's crimes.

### 2. Consecutive Sentences

The decision to impose consecutive or concurrent sentences is within the trial court's sound discretion and is reviewed only for an abuse of discretion. *Williams v. State*, 891 N.E.2d 621, 630 (Ind.Ct.App.2008). Although a trial court is required to state its reasons for imposing consecutive sentences, it may rely on the same reasons to impose a maximum sentence and also impose consecutive sentences. *Id.; see also Smith v. State*, 770 N.E.2d 818, 821 (Ind.2002) (concluding that "trial court is not obligated to identify the aggravators that support consecutive sentences separately from the factors that support the sentence enhancement"). A single aggravating circumstance may support the imposition of consecutive sen-

tences. *Hampton v. State,* 873 N.E.2d 1074, 1082 (Ind.Ct.App.2007).

Gellenbeck contends that the trial court failed to articulate its reasons for imposing consecutive sentences. The record clearly indicates, however, that it did so, finding Gellenbeck's relationship with V.S., the disparity of their ages, and her mental condition to be aggravating circumstances for purposes of imposing consecutive sentences. Having already concluded that all of these aggravating circumstances were properly found, we further conclude that the trial court did not abuse its discretion in imposing consecutive sentences.

### B. Whether Gellenbeck's Sentence is Appropriate

■■■ Gellenbeck contends that his seven-and-one-half-year sentence with three and one-half years suspended to probation is inappropriately harsh. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State,* 849 N.E.2d 650, 660 (Ind. Ct.App.2006), *trans. denied* (citations and quotation marks omitted).

The nature of Gellenbeck's offenses seems to us somewhat more heinous than "typical" cases of child seduction, as the relationship between him and his victim was much closer and their sexual acts much more intimate than the statute requires. Gellenbeck was charged, essentially, with helping his sixteen-year-old niece turn her life around at a time when

her relationships with her parents and her studies were suffering. Then, shortly after V.S. moved in, her mother committed suicide, "devastating" her and further increasing her vulnerability, which Gellenbeck then exploited. Gellenbeck first committed child seduction against V.S. as she lay in his bed next to his wife, with the seductions continuing over the course of several months. Gellenbeck ultimately digitally penetrated V.S.'s vagina, caused her to fondle his erect penis, and masturbated in her presence, ejaculating on her hand, all of which are far more intimate sexual acts than are required for child seduction. The effect of Gellenbeck's crimes on V.S. was such that at his sentencing on February 5, 2009, almost two years after his crimes, she "absolutely started trembling and broke into tears" when she saw him. Tr. p. 307. We would also note that Gellenbeck was married at the time, essentially making Theresa a victim as well.

Evidence relating to Gellenbeck's character is, for the most part, positive. Gellenbeck has no prior criminal history, is a college graduate, has a good work record, cooperated with authorities, and appears to be the only source of support for his disabled wife, all of which does him credit. On the other hand, Gellenbeck's actions indicate that, had his sexual relationship with V.S. not been discovered, he fully intended to continue it, encouraging her to keep it a secret and planning further sexual acts with her until shortly before discovery. On the whole, we conclude that the somewhat heinous nature of Gellenbeck's crimes is offset by his generally good character, rendering the imposition of advisory sentences appropriate. When we consider, however, the continuing nature of Gellenbeck's crimes, *i.e.,* they occurred over the course of several months, were all separate episodes of criminal conduct, and were increasing in severity, we conclude that or-

dering them to be served consecutively was also appropriate. Consequently, we conclude that Gellenbeck's seven-and-one-half-year sentence with three and one-half years suspended to probation is appropriate.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.