**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MATTHEW K. HAGENBUSH**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

TONY CAMPOS,                              )
                                         )
    Appellant-Defendant,            )
                                         )
       vs.                      )     No. 15A05-1210-CR-511
                                         )
STATE OF INDIANA,                         )
                                         )
    Appellee-Plaintiff.             )

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 15C01-1107-FA-16

**April 29, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Tony Campos appeals his sentence for battery with a deadly weapon as a class C felony. Campos raises one issue, which we restate as whether his sentence is inappropriate in light of the nature of the offense and his character. We affirm.

FACTS AND PROCEDURAL HISTORY

On June 12, 2011, Campos's sister, Lisa, and a group of others, including Darrell Cull and Michael Mobley, were at a bar celebrating a birthday. At some point, Lisa began to argue with Cull, and the bartender asked Mobley to "kind of get them out." Transcript at 55. Mobley had driven his truck and attempted to have everyone leave with him. Lisa said that she was calling Campos. Mobley said to Lisa "[a]re you coming, I'm leaving now," and Lisa responded that Campos was on his way to pick her up. Id. at 57. Mobley and the others traveled to Cull's residence.

Lisa called Cull's house numerous times and began to argue with Cull, and Mobley kept taking the phone and hanging up so that Cull and Lisa would stop arguing. During the phone calls, Lisa said that Campos was going to pick her up and that they would fight Cull. At some point, Mobley had gone into the basement with others in the group. Campos, Lisa, and Campos's cousin, Josh, traveled to Cull's residence, ran up to the porch, and pushed their way into the residence. Mobley heard the noise, ran up the stairs, and observed Campos and Josh "stomping on" Cull. Id. at 58. Campos saw Mobley, drew his gun, "put it to [Mobley's] head," pushed him against the wall, and said "[d]on't do anything." Id. at 59. Eventually, another person in the residence, Desiree, came into the room screaming "[j]ust leave, get out of here" and that she was calling the

2

police, and Campos "turned the gun on her, pushed her into the wall" and "yanked the phone out of her hand and threw it against the wall." Id. at 60.

At some point, Campos went into another part of the house to see who else was present, and Desiree left the room and called the police. Cull began to crawl, and Campos and Josh "started to just stomp on his head." Id. at 61. Desiree said that the police had been called, and Campos and Josh left the house. Cull, who was now covered in blood, and Mobley went outside and noticed that Campos "had unscrewed the light bulb so you couldn't see out into the front porch there where they were at" and had "taken [the] fuse box and ripped all [the] fuses out of [Mobley's] truck," which had been blocking in the other vehicles, so that no one could follow them. Id.

On July 21, 2012, the State charged Campos with criminal confinement with a deadly weapon as a class B felony, burglary as a class A felony, battery with a deadly weapon as a class C felony, and intimidation with a deadly weapon as a class C felony. Pursuant to a plea agreement signed June 1, 2012, Campos agreed to plead guilty to battery with a deadly weapon as a class C felony, and in exchange the State agreed to dismiss the remaining charges. The plea agreement also provided that Campos's sentence would not exceed six years. The court held a guilty plea hearing on June 1, 2012, at which Campos pled guilty in accordance with the terms of the plea agreement, and a sentencing hearing was held on August 1, 2012. The trial court found Campos's criminal history and the nature and circumstances of the crime to be aggravating factors, considered that Campos has a supportive family system, gave some weight to Campos's

expression of remorse, and considered Campos's plea agreement. The court sentenced Campos to six years to be served in the Indiana Department of Correction.

DISCUSSION

The issue is whether Campos's sentence is inappropriate. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Campos contends that his sentence should be reduced or that some portion of his sentence should be suspended in order to harmonize the circumstances and his character with his sentence. Campos argues that the trial court failed to recognize that, while there was a risk of significant harm, such harm did not occur, that the evidence presented by the State tends to militate against the idea that Campos had any intent to cause significant bodily injury with a weapon, that Campos is a mixed martial artist and thus had the capability without any sort of weapon to inflict considerable damage upon most individuals, that Cull, however, did not suffer any long term severe injuries, and that this leads to the conclusion that Campos had no intent to inflict serious injury but rather to frighten the subject. Campos further argues that, while he engaged in heinous behavior, it was not nearly as egregious as the State argued, that there was no discharge of the weapon at any point, that escalation of the situation has to be considered in light of the fact that the victims were intoxicated and possibly impaired at the time of the incident,

4

and that his intent should be evaluated in consideration of what he may have been told by his intoxicated sister, which suggests that his anger was the result of an extraordinary situation unlikely to recur. Campos also argues that he had no felony convictions and no history of using weapons, that testimony showed that he has a nonviolent character, and that the incident was out of character for him. He asserts that he has two young daughters and was the primary provider for them, that one of his children is a special needs child, that he was remorseful, and that while he did not have a steady job he worked as a maintenance technician.

The State points out that Campos repeatedly stomped on Cull's head, that this action was extremely vicious and heinous and exhibited Campos's complete lack of concern that Cull might be seriously or permanently injured, that Campos pointed his gun at the heads of two other individuals and ordered them to stand against the wall, that he threw Desiree's phone against the wall, and that Campos and his companion disabled a light on the front porch so that no one could see them and disabled a truck which was blocking all the other vehicles so that no one could pursue them. The State contends that these actions show premeditation and cool reflection, not someone acting under the sway of hot passion. The State further argues that Campos's decision to initiate the unprovoked attack reflects negatively on his character, that his actions show he is not a peaceful person, and that he willingly chose to resort to violence with a deadly weapon after no provocation even if that meant endangering multiple lives and the financial well-being of his daughters. In addition, the State argues that Campos's criminal record illustrates his character, that Campos had five prior misdemeanor convictions, including

one that was originally charged as a felony, that Campos's criminal conduct is increasing in severity, and that he received substantial benefits from his guilty plea in that class A and B felonies were dismissed and his sentence was capped at six years rather than the statutory maximum of eight years for a class C felony. The State also argues that Campos's actions show that he intended to do much more than merely frighten Cull and the others, that his choices were premeditated, that it is not appropriate to deal out violent retribution just because someone has argued with a sibling, that Campos has a twenty thousand dollar arrearage in his child support for his three older children, and that his parents and fiancée are currently caring for his younger children.

Our review of the nature of the offense reveals that Lisa had an argument with Cull at the bar, called Campos to pick her up, and later called Cull's house numerous times and stated that Campos was going to pick her up and they would fight Cull. Campos testified that Lisa was highly intoxicated at the time of the incident. Campos and his cousin Josh went to Cull's residence, pushed their way inside, and attacked Cull. Mobley observed Campos and Josh "stomping on" Cull. Transcript at 58. Campos drew his gun, "put it to [Mobley's] head," pushed Mobley against the wall, and said "[d]on't do anything." Id. at 59. Campos also "turned the gun on" Desiree, pushed her into the wall, and "yanked the phone out of her hand and threw it against the wall." Id. at 60. Campos and Josh later "started to just stomp on [Cull's] head." Id. at 61. Campos, Josh, and Lisa left only after Desiree announced that she had called the police. Mobley and Cull noticed that Campos, Lisa, and Josh had unscrewed the light bulb on the front porch and ripped the fuses out of Mobley's truck.

We also observe that, in addition to the charge to which he pled guilty, Campos was originally charged with criminal confinement with a deadly weapon as a class B felony, burglary as a class A felony, and intimidation with a deadly weapon as a class C felony, that pursuant to the plea agreement the State agreed to dismiss the remaining charges, and that the parties agreed that Campos's sentence would not exceed six years, which is the sentence the trial court imposed.

Our review of Campos's character reveals that, according to the presentence investigation report ("PSI"), his criminal history includes theft in Ripley County in 1989, two counts of driving while suspended in Dearborn County in 2006, disorderly conduct in Hamilton County, Ohio, in 2008, and petty theft in Butler County, Ohio, in 2010. Campos testified that he was a journeyman maintenance man, that he had a child support arrearage of about $20,000, that there was an order with respect to payment on the arrearage, and that at least some payment was made every week. The PSI indicates that Campos was forty-three years old at the time of sentencing, had been previously employed at a number of companies over the years, received an associate degree in 2005, and had been a participant and personal trainer in mixed martial arts and professional kick boxing. The PSI also indicates that Campos has three children who are eighteen years old or older and two daughters ages seven and five, that he had custody of the youngest two daughters, and that he gave temporary guardianship to his mother and girlfriend while he is incarcerated.

After due consideration and under the circumstances presented, we conclude that Campos has not sustained his burden of establishing that his sentence of six years for

battery with a deadly weapon as a class C felony is inappropriate in light of the nature of the offense and his character.

For the foregoing reasons, we affirm Campos's sentence.

Affirmed.

BRADFORD, J., concurs.

RILEY, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TONY CAMPOS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A05-1210-CR-511 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**RILEY, Judge, dissenting**

I respectfully dissent from the majority's decision to affirm the trial court's imposition of Campos' six year executed sentence. As noted, pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.

Although Campos has a criminal history, it is relatively minor, consisting only of five misdemeanors. He has no history of using weapons and generally presented to the trial court as a non-violent character. Specifically, not only family members informed the trial court that this incident was out of character but also a police officer familiar with

9

Campos testified that Campos was not a problem inmate and did not have any write-ups. According to the pre-sentence investigation, Campos is at a low risk to reoffend.

Furthermore, even though the trial court only focused on Campos' older children who do not live with him, Campos also supports two younger daughters who reside with him. He is the primary care giver of a five-your-old and a seven-year-old special needs child. Lacking a permanent job, he attempted to make ends meet as best as he could as a maintenance technician. Undoubtedly, his incarceration will be a hardship to them.

On the whole, I conclude that the somewhat egregious nature of Campos' crime is offset by his character, rendering a change in his sentence appropriate. *See Gellenbeck v. State*, 918 N.E.2d 706, 713 (Ind. Ct. App. 2009). Therefore, I would impose a sentence of 6 years, four years executed and two years suspended to probation.