**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 09 2013, 6:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DEREK DEWITT,                               )
                                 )
    Appellant-Defendant,                   )
                                 )
         vs.                                 )    No.  49A02-1301-CR-33
                                 )
STATE OF INDIANA,                           )
                                 )
    Appellee-Plaintiff.                    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Judge
Cause No. 49G02-1005-FA-41015

**October 9, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, we are asked to determine whether the trial court abused its discretion in ordering the appellant-defendant, Derek Dewitt, to serve consecutive sentences following his convictions for Attempted Murder,[1] a class A felony, and Murder,[2] a felony. Dewitt was sentenced to the advisory terms of fifty-five years for murder and to thirty years on the attempted murder count, for an aggregate term of eighty-five years. Dewitt claims that the trial court erred in sentencing him because it erroneously assumed that consecutive sentences should be imposed in every case that involve multiple victims.

We conclude that even though consecutive sentences should not be "automatically" imposed when there are multiple victims, the evidence demonstrated that it was proper for the trial court to sentence Dewitt to consecutive advisory sentences in light of the aggravating factors that were found. Thus, we affirm the judgment of the trial court.

## FACTS

On May 22, 2010, Dewitt struck and killed Tina Boozer-Carter and her daughter, D.C., while driving his Range Rover SUV. Boozer-Carter and her daughter were participating in a car wash at 56th Street and Emerson Avenue in Indianapolis to raise money for the Indiana School for the Deaf. Immediately after hitting the victims, Dewitt stopped his vehicle and yelled, "I ran them mother fu*kers over, yeah, they a*ses are dead now, ain't they?" Tr. p. 132-33. Dewitt sat down on a curb, and a witness to the

---

[1] Ind. Code § 35-41-5-1; Ind. Code § 35-42-1-1.

[2] I.C. § 35-42-1-1.

incident called 911. Another witness heard Dewitt say, "I know I did it and you can call the police and I'll tell them I did it." Id. at 140-41. Betty Watkins, who was also at the scene, heard Dewitt say four or five times, "Where is the cop? I did it." Id. Watkins asked Dewitt what his name was and he responded that he was "Derek, no, I'm Jesus, I'm from above." Id. at 150.

Indianapolis Metropolitan Police Department Officer Charles Rhodes was dispatched to the scene and advised Dewitt of the Miranda[3] warnings. Dewitt then admitted that he "gunned it" and accelerated his SUV to nearly seventy miles per hour to "hit the white people." Id. at 160. Dewitt stated that the "white people had done black Africans wrong taking diamonds from them making a lot of money from those diamonds, and only giving scraps to the Africans for their hard labor." Id. at 160. Dewitt admitted that he ran over the women "because they were white." Id. at 160, 181, 191-92. The witnesses observed that Dewitt was nonemotional, matter-of-fact, and showed no remorse.

Although Boozer-Carter recovered, D.C. died from her injuries on June 10, 2010. Dewitt was originally charged with two counts of attempted murder. Thereafter, the State amended the information and charged Dewitt with one count of attempted murder and one count of murder.

At a jury trial that commenced on December 3, 2012, Dewitt's uncle, Fred Dewitt (Fred), testified that he had been concerned about his nephew's mental health since 1997.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Dewitt had previously tried to kill both Fred and his son. And in 2000 or 2001, Fred obtained a court order to have Dewitt "committed." Tr. p. 245-47. Dewitt was diagnosed with schizoaffective disorder and placed on medication. Since that time, Dewitt had been in various jails and mental hospitals.

It was established at trial that sometime in 2009, Dewitt's mother, Carol Evans, called Dewitt on the telephone. At that time, she heard Dewitt say, "You had better leave me alone; I'll kill you." Tr. p. 323. Later, when Dewitt went to Evans's residence, he began swinging his arms, yelling that he hated Indianapolis, and was going to leave. Dewitt then hit Evans, ripped off his shirt and showed Evans his tattoos. Dewitt told Evans that "this is the sixes, this is the devil." Tr. p. 328. Dewitt then pulled out a knife and told Evans to grab her gun. However, Evans informed him that she did not have a gun. Dewitt grabbed a check that was made out to his father and left Evans's residence.

Although Dewitt was initially found incompetent to stand trial, the trial court later determined that Dewitt's competence was restored. Dewitt filed a belated notice of intent to invoke the insanity offense. Prior to trial, three mental health professionals examined Dewitt. Psychiatrist Philip Coons, who Dewitt had retained, determined that Dewitt did not appreciate the wrongfulness of his actions when he drove his car into Boozer-Carter and D.C. However, two other physicians found that Dewitt did appreciate the wrongfulness of his conduct when he committed the offenses.

Following the presentation of the evidence, the jury found Dewitt guilty but mentally ill of both offenses. At the sentencing hearing that was conducted on December

4

19, 2012, the trial court identified the following aggravating circumstances: 1) Dewitt's criminal history, which included aggravated assault in Georgia, first degree assault in Maryland and obstruction of police and assault in Virginia; 2) D.C.'s young age; 3) the fact that Dewitt did not take his medications and committed a new offense while in custody; and 4) the nature of the case in that Dewitt ran down two innocent victims who were attempting to raise money by working at a car wash to support the Indiana School for the Deaf.

As noted above, the trial court sentenced Dewitt to thirty years of incarceration on the attempted murder count and to fifty-five years for murder. The sentences were ordered to run consecutively, and the trial court noted that there were two victims in this case. Dewitt now appeals.

DISCUSSION AND DECISION

Dewitt claims that the trial abused its discretion in ordering him to serve consecutive sentences for the sole reason that two victims were involved. Specifically, Dewitt argues that the imposition of consecutive sentences was erroneous because the trial court announced at the sentencing hearing that "consecutive sentences are always appropriate in cases with multiple victims." Appellant's Br. p. 1. Dewitt also claims that he was entitled to an "individualized sentencing determination" so the trial court could determine whether consecutive sentences were appropriate. Id. at 6.

In addressing Dewitt's contentions, we initially observe that the decision to impose consecutive sentences lies within the trial court's discretion. Gellenbeck v. State,

918 N.E.2d 706, 711 (Ind. Ct. App. 2009). A trial court is required to state its reasons for imposing consecutive sentences, and it may rely on the same reasons for imposing maximum and consecutive sentences. Id.

A trial court must state its reasons for imposing consecutive sentences or enhanced terms. Owens v. State, 916 N.E.2d 913, 917 (Ind. Ct. App. 2009). Before imposing consecutive sentences, the trial court must identify at least one aggravating circumstance. Multiple victims constitute a valid aggravating circumstance that a trial court may consider in imposing consecutive or enhanced sentences. O'Connell v. State, 742 N.E.2d 943, 952 (Ind. 2001).

As set forth above, the trial court identified four valid aggravating factors in this case. The trial court then sentenced Dewitt to the advisory term of thirty years on the attempted murder count, to the fifty-five year advisory term on the murder count,[4] and ordered the sentences to run consecutively to each other.

Dewitt points out that our Supreme Court reversed the defendant's enhanced consecutive sentences in Sanchez v. State, 938 N.E.2d 720, 723 (Ind. 2010). However, while Sanchez received consecutive enhanced sentences for molesting his two stepdaughters, the record demonstrated that he did not have a significant criminal history and his prior convictions were not related to the offense of child molesting. Id. Although it was recognized that multiple victims will generally justify the imposition of enhanced and consecutive sentences, a divided Supreme Court found the aggravating circumstances

---

[4] The advisory sentence for attempted murder, a class A felony, is thirty years. Ind. Code § 35-50-2-4. And the advisory sentence for murder is fifty-five years. I.C. § 35-50-2-3.

6

sufficient to warrant imposition of enhanced sentences but not consecutive sentences. Id. (Dickson, J., dissenting).

In light of Sanchez, we embrace the notion that the imposition of consecutive sentences is not automatically warranted solely because multiple victims are involved. However, unlike the circumstances in Sanchez, the sentences that the trial court imposed upon Dewitt were advisory terms that were not enhanced. Additionally, as discussed above, Dewitt had a criminal history that included numerous convictions for violent crimes that included assault and battery. PSI at 4-5. And while the instant case was pending, Dewitt was charged with battery as a class D felony and resisting law enforcement. Id. at 5. In our view, even though consecutive sentences are not "automatic" in cases involving multiple victims, the facts and circumstances here, i.e., the various aggravating factors that were found, demonstrate that it was proper for the trial court to order Dewitt's sentences to run consecutively to each other.

Finally, contrary to Dewitt's contention, we note that he did receive an individualized sentencing statement. More specifically, a presentence investigation was conducted, the trial court examined Dewitt's background, his prior criminal convictions, and the nature of the offenses. PSI; Tr. p. 567. For all these reasons, we decline to disturb Dewitt's sentence.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.

7