## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2015, 8:50 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Patricia Caress McMath
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Karl A. Wikstrom, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 31, 2015 <br><br> Court of Appeals Case No. <br> 52A02-1502-CR-65 <br><br> Appeal from the Miami Circuit Court <br><br> The Honorable Timothy P. Spahr, Judge <br><br> Trial Court Cause No. <br> 52C01-1208-FA-58 |

**Bradford, Judge.**

## Case Summary

Over a period of two years, Appellant-Defendant Karl Wikstrom sexually molested his step-daughters when they were between the ages of twelve and fourteen. Wikstrom was convicted of four counts of Class A felony child molestation, one count of Class C felony child molesting, and one count of Class D felony child solicitation. The court imposed an aggregate 124-year sentence: four years for count 1, Class C felony child molesting; one-and-a-half years on count 2, Class D felony child solicitation; and thirty years on each of the four counts of Class A felony child molesting, with counts 1 and 2 to be served concurrently and the remaining counts to be served consecutively. Wikstrom argues that his sentence is inappropriate and should be revised pursuant to Indiana Appellate Rule 7(B). We affirm Wikstrom's sentence.

## Facts and Procedural History

Wikstrom and Leslie Wikstrom ("Leslie") married in 2002. Leslie had two daughters from a previous marriage, Sa.B. and Sh.B., who were born in 1996 and 1998, respectively. Wikstrom and Leslie had one child together, K.W, who was born in 2002. In 1999, Wikstrom injured his back at work, was permanently disabled and unable to work, received disability benefits, and was prescribed pain medication. Wikstrom would typically take his prescribed medication by crushing and snorting it, a process he would carry out in front of the children. Sa.B. testified that the medication would make Wikstrom violent and aggressive.

[3] In 2010, Sa.B. and Sh.B. lived with Wikstrom, Leslie, and K.W. at the Cedar Creek Mobile Home Park in Peru, Indiana. Leslie and Wikstrom lived in separate mobile home trailers because the two would often fight and separate. On one occasion when Sa.B. was thirteen years old, Wikstrom entered her room, asked her to wake up, gave her an unidentified white pill, and took her into the back bedroom, where she laid in bed between Leslie and Wikstrom. At some point, Leslie performed oral sex on Wikstrom after which Sa.B. was instructed to and did perform oral sex on Wikstrom. During this incident, Leslie touched Sa.B.'s breasts and Wikstrom inserted his finger into Sa.B.'s vagina. This was the first incident of sexual misconduct between Sa.B. and Wikstrom.

[4] A couple weeks after the first incident, Wikstrom approached Sa.B. while she was in the bathroom and requested that she perform oral sex on him. After refusing several times, Sa.B. ultimately submitted to Wikstrom's request. Sa.B. then told Wikstrom that "[she] couldn't do it anymore because [her] throat hurt," at which point "he got mad and told [Sa.B.] to get the f[***] out of the bathroom." Tr. p. 350.

[5] On September 21, 2010, Wikstrom was arrested for domestic battery. Leslie and the children stayed in a domestic violence shelter for approximately two weeks until the domestic abuse charges against Wikstrom were dropped at Leslie's request.

[6]     After being evicted from their trailers on November 19, 2010, Wikstrom, Leslie, and the three children moved into a single room at Skyview Motel in which Wikstrom and Leslie slept in one bed and the three children slept in the adjacent bed. On one occasion at Skyview, Wikstrom approached then-twelve-year-old Sh.B. while the two were alone in the room and asked her to perform oral sex on him, which she did. At the time, a pornographic film was playing on the television. While the family lived at Skyview, Wikstrom played pornographic films nearly every night. Sa.B. and Sh.B. saw and heard Wikstrom and Leslie having sex most nights.

[7]     The first incident of sexual misconduct involving Sa.B. at Skyview occurred late one night when then-thirteen-year-old Sa.B. got up to use the bathroom. Wikstrom requested that Sa.B. perform oral sex on him. Sa.B. initially refused before finally giving in to his requests. During this incident, Sa.B. performed oral sex on both Wikstrom and Leslie, and Leslie performed oral sex on Sa.B. During the month that the family lived at Skyview, Sa.B. estimated that she had approximately fifty sexual encounters with Leslie and Wikstrom.

[8]     In December 2010, the family moved to a home on North Lincoln Street in Peru. A couple months after moving to the Lincoln street home, Leslie came into Sh.B.'s room at night, woke her up, and asked if she would go into Wikstrom's bedroom an perform oral sex on him. Sh.B. began crying and pleaded not to. The following night, Leslie asked Sh.B. if she would "squeeze in between" Wikstrom and Leslie while they had sex, to which Sh.B. complied. Tr. p. 290. During this encounter, Sh.B. gave Wikstrom a "hand job," tr. p.

290, Wikstrom touched Sh.B.'s breast, Leslie performed oral sex on Sh.B., and Wikstrom attempted to have anal sex with Sh.B.

[9] A couple weeks later, in February or March of 2011, Wikstrom approached Sh.B. and again asked her to perform oral sex on him, which she did. Afterward, Wikstrom masturbated in front of Sh.B. Sh.B. estimated that while living at the Lincoln street home, she had "five or ten" sexual encounters with Wikstrom and performed oral sex on him four or five times. Tr. p. 295.

[10] In May 2012, the Department of Child Services ("DCS") began investing the family after receiving reports of fighting and drug abuse. On May 14, 2012, Sa.B. and Sh.B. were placed in foster care. A couple months after being placed in foster care, Sh.B. admitted that she had been physically, verbally, and sexually abused by Wikstrom. On August 10, 2012, the State of Indiana ("the State") charged Wikstrom with five counts of Class A felony child molesting, one count of Class C felony child molesting, and one count of Class D felony child solicitation. On December 11, 2014, a jury found Wikstrom guilty of four of the five counts of Class A felony child molesting, Class C felony child molesting, and Class D felony child solicitation.

[11] In fashioning its sentence, the trial court identified two aggravating factors: Wikstrom's position of trust and the significant harm to the victims. Both victims were diagnosed with post-traumatic stress disorder ("PTSD"), required in-patient treatment for five days following their removal from the home, had been receiving counseling for two-and-a-half years at the time of sentencing to

address the PTSD issues, and will require ongoing therapy. The trial court found that Wikstrom's lack of criminal convictions was a mitigating factor, although afforded it little weight due to the evidence suggesting that "there was a period of ongoing and estensive, continuing drug activity, illegal drug activity on the part of both of the adults in the [] home....that blunts the argument that [the lack of criminal history] should somehow serve as a very significant mitigator." Tr. p. 591. The court imposed an aggregate 124-year sentence: four years for count 1, Class C felony child molesting; one-and-a-half years on count 2, Class D felony child solicitation; and thirty years on each of the four counts of Class A felony child molesting, with counts 1 and 2 to be served concurrently and the remaining counts to be served consecutively.

# Discussion and Decision

[12]  Wikstrom argues that his 124-year sentence is inappropriate in light of the nature of his offenses and his character. "Ind. Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender." *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. "An appellant bears the burden of showing both prongs of the inquiry favor revision of [his] sentence." *Id*. (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). "We must give 'deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and

recognize the unique perspective a trial court brings to its sentencing decisions.'" *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013) (quoting *Trainor v. State*, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), *trans. denied*.)

[13] Indiana Code section 35-50-1-2 provides that the trial court shall determine whether terms of imprisonment shall be served concurrently or consecutively and that the court may consider the aggravating and mitigating circumstances in making such a determination. "The decision to impose consecutive or concurrent sentences is within the trial court's sound discretion and is reviewed only for an abuse of discretion…. A single aggravating circumstance may support the imposition of consecutive sentences." *Gellenbeck v. State*, 918 N.E.2d 706, 712 (Ind. Ct. App. 2009) (citations omitted).

[14] Initially, we note that the trial court imposed the advisory sentence for each of the convictions and that Wikstrom was eligible for a sentence of up to 211 years. However, Wikstrom argues that the trial court's decision to run the sentences consecutively was inappropriate. Wikstrom argues that his offenses were comparable to those at issue in *Smith v. State*, 889 N.E.2d 261 (Ind. 2008). Smith was convicted of four counts of Class A felony child molesting, one count of Class C felony child molesting, and one count of Class D felony fondling in the presence of a minor. *Id*. at 262. Smith had engaged in sexual misconduct with his step-daughter on numerous occasions over a four-year period. *Id*. The victim was between the ages of ten and thirteen during the various incidents. *Id*. The trial court sentenced Smith to an aggregate 120-year sentence, thirty years for each Class A felony conviction to be served

consecutively. *Id.* On appeal, the Indiana Supreme Court revised the sentence to "a total executed sentence of 60 years (consecutive standard 30-year terms on two counts, remaining terms concurrent)." *Id.* at 264. The Court reasoned as follows:

> We assign aggravating weight in the low range to Smith's prior criminal history….We assign mitigating weight in the low range to Smith's poor mental health. Taken together, these factors do not warrant any deviation from the presumptive sentence of 30 years imposed by the trial court for each count. However, we find that Smith's repeated molestations of K.J., together with his violation of his position of trust and his infliction of psychological abuse, warrant the sentence on one of these counts being imposed consecutive to one of the other counts. We direct that the sentences on the remaining two counts be served concurrently with the other two.

*Id.*

[15] Wikstrom also cites to *Pierce v. State* to bolster his argument that his sentence should be revised. 949 N.E.2d 349 (Ind. 2011). In *Pierce*, the Indiana Supreme Court reduced defendant's sentence for three convictions of Class A felony child molestation and one count of Class C felony child molesting from 134 years to eighty years. *Id.* at 353. The Court found that reducing the sentence was appropriate where there was only one victim.

> "Whether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences...." [*Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).]. *See also Harris v. State*, 897 N.E.2d 927, 930 (Ind. 2008) (revising consecutive child molesting sentences to run concurrently where

there was only one victim); *Smith v. State*, 889 N.E.2d 261, 264 (Ind. 2008) (same); *Monroe v. State*, 886 N.E.2d 578, 580 (Ind. 2008) (same). *Cf. Sanchez v. State*, 938 N.E.2d 720, 723 (Ind. 2010) (acknowledging that "generally, multiple victims justify the imposition of enhanced and consecutive sentences").

*Id*.

[16] Wikstrom's argument is unpersuasive. We find that *Pierce* and *Smith* do not support the reduction of Wikstrom's sentence and instead provide significant justification for the trial court's imposition of consecutive sentences. Although the Courts in both *Pierce* and *Smith* reduced defendants' overall sentences, both defendants still received consecutive sentences for Class A felony child molesting despite the fact that there was only one victim in those cases. The principal distinction in the instant case is that there were two victims of Wikstrom's predatory behavior, a fact which is "highly relevant" in the decision to impose additional consecutive sentences. *Cardwell*, 895 N.E.2d at 1225.

[17] Furthermore, in regards to the nature of the offense, Wikstrom's crimes were particularly egregious. Wikstrom molested the victims during "so many incidents, that [you] can't [] put a number to it," tr. p. 313, "it was a constant thing." Tr. p. 356. The record reveals that Wikstrom perpetrated these molestations on a nearly daily basis. In addition to the direct molestations, Wikstrom's constant overtly sexual behavior permeated every facet of the victims' lives. When the family lived in a single motel room, Wikstrom continued to play pornographic films daily and would have sex with Leslie in front of the children. Wikstrom openly discussed his sex life with Leslie with

the children and would "take it out on [Sh.B.], Leslie, and [Sa.B.]" when "he didn't get sex that day." Tr. p. 279. Sa.B. testified that on one occasion, Wikstrom gave her an unidentified white pill before engaging her sexually with Leslie. The victims also reported that Wikstrom would become verbally abusive when they were reluctant to submit to his sexual advances. In sum, the victims were sexually, physically, and verbally abused so comprehensively and consistently that it was inescapable.

[18] Although Wikstrom's lack of criminal history is an appropriate mitigating factor, the record portrays Wikstrom's character much more poorly. In addition to the general depravity necessary to commit the instant crimes, the record indicates that "there was a period of ongoing and extensive, continuing [] illegal drug activity on the part of both adults [] in the home, both Mr. Wikstrom and his wife." Tr. p. 591. Sa.B. testified that Wikstrom would abuse his medication by crushing and snorting it and would thereafter become aggressive and violent.

[19] Wikstrom's offenses and character more than justified his sentence. "Whether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences if for no other reason than to preserve potential deterrence of subsequent offenses. Similarly, additional criminal activity directed to the same victim should not be free of consequences." *Cardwell*, 895 N.E.2d at 1225. In light of this precedent, it was not inappropriate for the trial court to impose separate consecutive sentences when considering both the repeated nature of the offenses and the multiple victims.

The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.