# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 15 2018, 8:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David C. Kolbe
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven Hagan, *Appellant-Defendant,* | March 15, 2018 |
| v. | Court of Appeals Case No. 43A03-1706-CR-1324 |
| | Appeal from the Kosciusko Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable David C. Cates, Judge |
| | Trial Court Cause No. 43D01-1606-F6-328 |

**Barnes, Judge.**

## Case Summary

Steven Hagan appeals his convictions for Level 6 felony child seduction and Class A misdemeanor contributing to the delinquency of a minor. We affirm.

## Issues

Hagan raises two issues, which we consolidate and restate as whether the evidence is sufficient to sustain his convictions.

## Facts

Forty-seven-year-old Hagan lived with his wife and daughters, including A.H. A.H.'s best friend was sixteen-year-old J.S. During late 2015, J.S. started spending the night with A.H. frequently, and it increased gradually until she was spending five nights a week with A.H. While J.S. was with the Hagans, they provided her with food, toiletries, occasionally clothing, allowed her to drive their car, asked if she could be placed on their health insurance, expected her to follow the rules of their house, and built a bedroom for her in the basement. Hagan got J.S. a job with his employer, added J.S. to their family YMCA membership, and opened a bank account for her that required his approval for withdrawals. At Christmas 2015, Hagan's relationship with J.S. began to change into a sexual relationship.

In March 2016, Hagan took J.S. on a college visit to Indianapolis. J.S.'s mother learned that A.H. did not go on the trip and became suspicious about the relationship between Hagan and J.S. J.S.'s mother then texted Hagan and told him to stay away from J.S., and she refused to let J.S. go to Hagan's house

anymore. She met Hagan in a parking lot to get J.S.'s clothing and again told Hagan to stay away from J.S. Someone then left another bag of clothing at their door, and Hagan had hidden a cellphone for J.S. in the bag.

[5] On April 15, 2016, J.S.'s mother asked J.S. to go out to dinner with her. J.S. said that she was tired and refused to go. J.S. used the cellphone provided by Hagan to call Michelle Fritz, Hagan's sister. She told Fritz that she had run away, that she was in the woods, and that she needed a ride. However, Fritz was unable to locate J.S. J.S. also called Hagan. Hagan contacted his friend, Kevin Zickefoose, and asked him to pick up Hagan's "niece" at Flexhaust. Appellant's App. Vol. II p. 44. Zickefoose picked up J.S. and took her to his house, but his estranged wife was "pretty livid." *Id.* at 46. Zickefoose then took J.S to a hotel.

[6] When J.S.'s mother returned home, she realized that J.S. was gone and reported to the police that J.S. was a runaway. Officers called Hagan, who said that he was not with J.S. and that he did not know where she was. Hagan's sister, Michelle Fritz, flagged down an officer and gave officers the phone number that J.S. was using. The officers performed an "emergency locate" on the cell phone and learned that it was located near an Applebee's restaurant. *Id.* at 23. The officers could not locate J.S. at the Applebee's and started checking the hotels near that location. They located J.S. in a hotel room with Zickefoose.

[7] The State charged Hagan with Level 6 felony child seduction and Class A misdemeanor contributing to the delinquency of a minor. After a bench trial, Hagan was found guilty as charged. The trial court sentenced him to one year for the Level 6 felony conviction and six months for the misdemeanor conviction with the sentences to be served concurrently and suspended to probation. Hagan now appeals.

## Analysis

[8] Hagan argues that the evidence is insufficient to sustain his conviction. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

### *A. Child Seduction*

[9] Indiana Code Section 35-42-4-7(m) governs the offense of child seduction and provides:

> If a person who:
>
> (1) is at least eighteen (18) years of age; and
>
> (2) is the:

> (A) guardian, adoptive parent, adoptive grandparent, custodian, or stepparent of; or
>
> (B) child care worker for;
>
> a child at least sixteen (16) years of age but less than eighteen (18) years of age;
>
> engages with the child in sexual intercourse, other sexual conduct (as defined in IC 35-31.5-2-221.5), or any fondling or touching with the intent to arouse or satisfy the sexual desires of either the child or the adult, the person commits child seduction.

The statute defines "custodian" as "any person who resides with a child and is responsible for the child's welfare." I.C. § 35-42-4-7(e). Hagan's only argument is that the State failed to present evidence to demonstrate that he was J.S.'s "custodian." He does not dispute that the State presented sufficient evidence regarding the other elements of the offense.

[10] In support of his argument, Hagan relies on *State v. D.M.Z.*, 674 N.E.2d 585 (Ind. Ct. App. 1996), *trans. denied*. There, a child-care worker employed at a youth shelter was charged with child seduction for seducing a sixteen-year-old resident of the shelter. The defendant argued that she did not qualify as a "custodian" for purposes of the child seduction statute.[1] We agreed and held:

> Here, the State's evidence shows that D.M.Z. was a staff employee at the Shelter and held the position of a "child-care

---

[1] The child seduction statute was later amended to include a "child care worker."

worker." She was responsible for supervision of the day-to-day activities of the residents and would discuss with parents, probation officers, and caseworkers a child's specific behavioral problems. D.M.Z. could decide whether a child was to participate in a school recreational function or an extracurricular activity based upon the child's behavior, and she could suspend a child's privileges if necessary. As a child-care worker, D.M.Z. was expected to handle medical emergencies and was permitted to administer over-the-counter medications. Her duties also required her to monitor a resident's daily hygiene habits.

However, to be a "custodian" within the meaning of the child seduction statute, an individual must exercise more than limited or occasional supervision over a child. D.M.Z. was an hourly employee at the very bottom of the organization chart and was herself subject to the direction and control of a counselor. On these facts, it cannot be said that she was responsible for the child's welfare.

We hold that to be a custodian under the statute, a person "responsible for a child's welfare," a person must occupy a position of trust and have the authority and responsibility to make decisions concerning the child's welfare, to act without guidance or superior authority, as a parent would or in loco parentis. D.M.Z. did not occupy such a position. Accordingly, we hold that D.M.Z. was not C.P.'s custodian and that the trial court properly dismissed the charges against her.

*D.M.Z.*, 674 N.E.2d at 589-90 (internal citations and footnote omitted).

[11] We reached a different conclusion in *Gellenbeck v. State*, 918 N.E.2d 706 (Ind. Ct. App. 2009). There, a sixteen-year-old child was living with her uncle and aunt during the week. She stayed with her father every other weekend. The uncle and aunt provided her with food, shelter, transportation, homework and

school assistance and required her to obey their rules. They were authorized to punish or discipline the child. However, her father continued providing financial support, medical care, insurance, clothing, and school supplies, and took her to appointments. The uncle began a sexual relationship with the child, and he was convicted of child seduction. On appeal, he argued that he was not the child's custodian. We held:

> We conclude that the record contains ample evidence to allow a jury to conclude that Gellenbeck was a "custodian" under section 35-42-4-7. The record contains testimony that Gellenbeck and his wife had responsibility for parental tasks; they provided V.S. with food, shelter, and transportation; and they were authorized to discipline V.S. if she failed to follow their rules. Gellenbeck spent an "enormous amount of time" assisting V.S. with her studies and homework and was authorized to communicate with her school regarding educational issues. There is no evidence that Father had any influence over Gellenbeck's exercise of these responsibilities. Moreover, V.S. regarded Gellenbeck as a father figure.

> Indeed, the reason V.S. moved in with Gellenbeck and Theresa at all was so that they could help her to progress and thrive, as a parent would be expected to. Before moving in, V.S.'s relationships with her mother and Father had deteriorated, as had her grades, problems Father felt helpless to correct. The record indicates that Gellenbeck and Theresa enthusiastically welcomed their new charge, being "more than willing to do whatever it took to help out to try to straighten out V.S.'s life." Gellenbeck was clearly charged with far more than mere supervision—it seems that he was charged with nothing less than helping V.S. to turn her academic and personal lives around, a responsibility he willingly accepted. So, while Father retained some responsibility for V.S.'s welfare, this did not negate

Gellenbeck's responsibility, which was great indeed. Thus, we conclude that the State presented sufficient evidence for a reasonable jury to conclude that Gellenbeck was V.S.'s custodian under the statute.

*Gellenbeck*, 918 N.E.2d at 711.

[12] Hagan argues that he "stood in a significantly lesser role than the Gellenbecks" and that he was more like the defendant in *D.M.Z.* Appellant's Br. p. 17. We disagree and conclude that this case is more like *Gellenbeck*. The State was required to demonstrate that Hagan resided with J.S. and that he was responsible for her welfare. During late 2015 and early 2016, J.S. spent five nights a week with the Hagans. During this time, they provided her with food, toiletries, occasionally clothing, allowed her to drive their car, asked if she could be placed on their health insurance, expected her to follow the rules of their house, and built a bedroom for her in the basement. Hagan got J.S. a job with his employer, added J.S. to their family YMCA membership, and opened a bank account for her that required his approval for withdrawals. In March 2016, Hagan took J.S. on a college visit to Indianapolis. Although J.S.'s mother still retained some control over J.S., the State presented sufficient evidence that J.S. was residing with Hagan and that he was at least partially responsible for her welfare. Hagan's argument to the contrary is merely a request that we reweigh the evidence, which we cannot do. The evidence is sufficient to sustain Hagan's conviction for child seduction.

### B. Contributing to the Delinquency of a Minor

[13] Indiana Code Section 35-46-1-8(a) governs the offense of contributing to the delinquency of a minor and provides: "A person at least eighteen (18) years of age who knowingly or intentionally encourages, aids, induces, or causes a child to commit an act of delinquency (as defined by IC 31-37-1 or IC 31-37-2) commits contributing to delinquency, a Class A misdemeanor . . . ." The State alleged that the delinquent act J.S. committed was being a runaway. Indiana Code Section 31-37-2-2 provides: "A child commits a delinquent act if, before becoming eighteen (18) years of age, the child leaves home or a specific location previously designated by the child's parent, guardian, or custodian: (1) without reasonable cause; and (2) without permission of the parent, guardian, or custodian, who requests the child's return."

[14] Hagan argues that, after J.S. ran away, he urged her to return to her mother and that he did nothing to encourage, induce, or cause her to leave home. However, the State presented evidence that, after beginning a romantic relationship with J.S., Hagan encouraged her to "stand up to" her mother, told her that she had "rights and that [she] should use them," and said that she should become emancipated from her mother. Tr. Vol. II pp. 122-23. He also secretly gave J.S. a cell phone. After J.S. left her home, she called Hagan, who gave her the code to get into his employer's business and called his friend to pick her up. When officers contacted Hagan, he denied knowing where J.S. was located. This evidence is sufficient to demonstrate that Hagan knowingly

or intentionally aided J.S. in her attempt to run away. Hagan's argument is merely a request that we reweigh the evidence, which we cannot do.

## Conclusion

[15] The evidence is sufficient to sustain Hagan's convictions for Level 6 felony child seduction and Class A misdemeanor contributing to the delinquency of a minor. We affirm.

[16] Affirmed.

Najam, J., and Mathias, J., concur.